IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Southern Division)

SEP 1 0 2001

CLERK'S OFFICE AT GREENBELT
DISTRICT OF MARYLAND

DEPUTY

MALEESA COLLIER, *et al.*,

    Plaintiffs,

        v.

BOARD OF EDUCATION OF
PRINCE GEORGE'S COUNTY, *et al.*,

    Defendants.

     \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

\*

\*    Civil Action No. DKC 2001-1179

\*

\*

\*    [PROPOSED] **FINAL APPROVAL**
      **ORDER AND CONSENT DECREE**
\*

\*

On April 20, 2001, plaintiffs filed this action for injunctive and declaratory relief seeking an

order requiring defendants Prince George's County Board of Education and Superintendent Iris T. Metts

to comply with the Steward B. McKinney Act as regards the education of homeless children.

On April 30, 2001, the Court granted plaintiffs' motion for a preliminary injunction.

On June 1, 2001, the Court approved plaintiffs' Motion for Class Certification. The named

plaintiff children were certified as representatives of

all school-aged children aged three and older who, on or after August 1, 2000: (1) have lived,
live or will live in Prince George's County, Maryland; and (2) during such period have been, are,
or will be "homeless" as defined in the McKinney Act, 42 U.S.C. § 11302 ("Class A").

The names plaintiff parents were certified as representatives of

the class of all parents, guardians and adults responsible for the children in Class A ("Class B").

On July 24, 2001, the parties submitted to the Court the Proposed Settlement Agreement and

Consent Decree.

On August 1, 2001, the Court granted preliminary approval of the Settlement Agreement and

Consent Decree.

UPON CONSIDERATION of any comments submitted by members of the class and of argument by counsel at the fairness hearing on September 7, 2001, the Court finds

1)     that the terms of the Settlement Order and Consent Decree adequately address the claims raised in plaintiff's complaint; and

2)     that the terms of the Settlement Order and Consent Decree adequately protect the interests of the class members.

IT IS therefore this _____7th_____ day of ___Sept.___, 2001, ORDERED that:

1)     The terms of the Settlement Agreement and Consent Decree, a copy of which is attached hereto, are incorporated herein;

2)     The Settlement Agreement and Consent Decree is granted final approval pursuant to Fed. R. Civ. P. 23(e); and

3)     The Clerk will mail copies of this Order and the attached Settlement Agreement and Consent Decree to counsel of record.

_Deborah K. Chasanow_
Deborah K. Chasanow
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Southern Division)

AUG – 1 2001

MALEESA COLLIER, *et al.*,

  Plaintiffs,

   v.

BOARD OF EDUCATION OF
PRINCE GEORGE'S COUNTY, *et al.*,

  Defendants.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

\* Civil Action No. DKC 2001-1179

\* **[PROPOSED]**
**SETTLEMENT AGREEMENT**
\* **AND CONSENT DECREE**

\*

\*

  The parties, having reached a settlement of this matter, agree to the following:

Revision of Policy

1.  No later than October 1, 2001, the Prince George's County Board of Education (PGCBE) shall revise its Administrative Procedure 5010 to incorporate the terms of this Agreement and the provisions of COMAR 13A.05.09, and to modify the existing terms to conform to the requirements of this Agreement and the said COMAR provisions. To the extent that the terms of this Agreement exceed or do not differ from the requirements of COMAR, the terms of this Agreement control. PGCBE shall submit a draft of the revised Administrative Procedure to the plaintiffs' counsel for review and comment on or before September 15, 2001. Should plaintiffs' counsel believe that the draft is inadequate to satisfy the terms of this Agreement, they shall endeavor to resolve the dispute with the PGCBE. If the parties cannot agree, either party may request that the Court resolve whether the draft complies with the obligations imposed by this Agreement.



Forms

2.    No later than October 1, 2001, PGCBE shall develop an "omnibus" form for use in identifying, tracking and serving homeless children and youth.  In addition to student identifying information, the omnibus form shall contain the following sections:

a.    School Choice for Homeless Students;

b.    Transportation Request;

c.    Request for Services for Homeless Students;

d.    Request for Waiver of School Fees;

e.    Notice of Denial of Services; and

f.    Right to Appeal.

3.    No later than October 1, 2001, PGCBE shall also develop an Appeal Form.

4.    The School Choice for Homeless Students section on the omnibus form shall include a place for the parent to indicate a selection of either the school of origin or the local school in the best interest of their child and to write in the name of the selected school.

5.    The Transportation Request section shall include places to record all the information necessary to process a transportation request as well as a place to record the details of the transportation arrangements made for the homeless student.

6.    The Request for Services for Homeless Students section shall include a checklist of available services, including but not limited to the following, if offered by the school system: help enrolling in school; school transportation services; help in getting school records transferred; tutoring or homework assistance; help in getting special education

2

services; participation in free meal programs at school; school supplies; referrals for medical or dental care; referrals for food and clothing assistance; social services and after-school child care.

7.   The Request for Waiver of School Fees section shall include a list of waivable fees, including but not limited to book and materials fees, locker fees, field trip fees, lab fees, uniform and equipment fees, fees for class supplies, extra-curricular activity fees, graduation fees, school record fees, school health service fees, driver's education fees, or any other fees associated with school activities.

8.   The Notice of Denial of Services section shall be used to record the denial of any service requested on any other section of the form as well as an explanation of the reason for the denial.

9.   The Right to Appeal section shall state in easy-to-read language a summary of the appeal process.

10.   The omnibus form shall be designed in such a way that it can be used effectively by both English- and Spanish-speaking individuals.

11.   Plaintiffs' counsel shall be given a meaningful opportunity to review and comment on the omnibus form and the Appeal Form before they are finalized and adopted.

12.   No later than October 1, 2001, PGCBE shall revise its School Enrollment Form and its School Withdrawal Form to include a place to record whether the withdrawal or enrollment of the student is related to homelessness and if so, and if the child has not been attending school for any period, the last date of attendance and how many school

3

days the child has missed. Plaintiffs' counsel shall be given a meaningful opportunity to review and comment on the revised forms before they are finalized and adopted.

Outreach and Coordination with Social Services and Housing Agencies

13.    No later than October 15, 2001, PGCBE shall develop and reproduce an easy-to-understand flyer or brochure, at or below reading grade level 5, to be available in both English and Spanish, describing the rights of homeless students and their parents under the McKinney Act, the Maryland State Department of Education (MSDE) regulations, PGCBE policies and this Agreement, including but not limited to information about choice of schools, the availability of transportation, how to enroll in a new school, the availability of a fee waiver, the services available to homeless students through PGCBE, how a student can gain access to these services, the importance of telling someone at the school if a student loses permanent housing, and the right to appeal a denial of services or other adverse action. PGCBE shall submit a draft of the flyer or brochure to the plaintiffs' counsel for review and comment on or before October 1, 2001. Should plaintiffs' counsel believe that the draft is inadequate to satisfy the terms of this Agreement, they shall endeavor to resolve the dispute with PGCBE. If the parties cannot agree, either party may request that the Court resolve whether the draft complies with the obligations imposed by this Agreement.

14.    Beginning in school year 2001-2002 and ongoing, PGCBE shall distribute to all parents of students attending a public school in Prince George's County twice each year (once in the fall semester and once in the spring semester) a copy of the above-mentioned flyer or

4

brochure.

15.    No later than October 30, 2001 and at least once a year thereafter or more frequently as
needed, PGCBE shall distribute at least 300 copies of the informational flyer or brochure
described in paragraph 13 of this Agreement, at least 200 copies of the omnibus form, and
at least 200 copies of the Appeal Form to each homeless shelter in Prince George's
County which serves school-aged children and youth, including domestic violence
programs.  The Homeless Education Coordinator (HEC) shall maintain a complete and
accurate record of the identity of all persons or entities to whom these materials were
sent, the numbers of materials sent, and the dates on which they were sent.

16.    No later than October 15, 2001, PGCBE shall design and print a large informational
poster, at or below reading grade level 5, in both English and Spanish, describing the
rights of homeless students and their parents under the McKinney Act, the MSDE
regulations, PGCBE policies and this Agreement, including but not limited to school
choice and the availability of transportation services, how to enroll in a new school, the
availability of a fee wavier, the other services available to homeless students through
PGCBE, how a student can gain access to these services, the importance of telling
someone at the school if a student loses permanent housing, and the right to appeal a
denial of services or other adverse action.  PGCBE shall submit a draft of the poster to the
plaintiffs' counsel for review and comment on or before September 30, 2001.  Should
plaintiffs' counsel believe that the draft is inadequate to satisfy the terms of this
Agreement, they shall endeavor to resolve the dispute with PGCBE.  If the parties cannot

5

agree, either party may request that the Court resolve whether the draft complies with the obligations imposed by this Agreement.

17.   No later than October 15, 2001, and once a year thereafter, PGCBE shall distribute copies of the above-mentioned poster to each public school in Prince George's County where it shall be displayed prominently in the school's front office, or in a location where parents are likely to view it.

18.   No later than October 15, 2001, and once a year thereafter, PGCBE shall distribute copies of the above-mentioned poster to each Prince George's County homeless shelter which houses homeless children or youth, including domestic violence programs, to each Department of Social Services (DSS) office in Prince George's County, and to each DSS-contracted agency or entity, identified to PGCBE by DSS, which serves homeless children and youth or their parents, with a request that the poster be displayed prominently in a public area. The HEC shall maintain a complete and accurate record of the identity of all persons or entities to whom these posters were sent and the dates on which they were sent.

19.   No later than November 1, 2001, and once a year thereafter, PGCBE shall distribute copies of the above-mentioned poster to a list of local churches, food banks, clothes closets, soup kitchens, day care centers, community centers, substance abuse treatment programs, and libraries, to be mutually agreed upon by the parties, with a request that the posters be displayed prominently in a public area. The HEC shall maintain a complete and accurate record of the identity of all persons or entities to whom these posters were

6

sent and the dates on which they were sent.

20. PGCBE shall establish a toll-free number at which homeless students and their parents may reach a PGCBE staff person during regular business hours who is trained and knowledgeable concerning PGCBE's obligations and the rights of students under the McKinney Act, MSDE regulations, PGCBE policy and this Agreement. This toll-free number shall be included on the brochure or flyer referenced in paragraph 13 of the Agreement, on the poster referenced in paragraph 16 of this Agreement.

21. No later than November 15, 2001 and at least twice during each school year thereafter, PGCBE staff shall visit each homeless shelter in Prince George's County which serves school-aged children and youth, including domestic violence programs, and shall offer to train all shelter staff on PGCBE's obligations and the rights of students under the McKinney Act, MSDE regulations, PGCBE policy and this Agreement, the role of shelter staff in collaborating with PGCBE to fulfill its obligations, and the proper use and disposition of all PGCBE forms regarding the education of homeless children and youth. The HEC shall maintain a complete and accurate record of each visit, including, but not limited to the date of the visit, the person(s) who participated from the shelter, and any follow-up resulting from the visit.

22. No later than September 30, 2001 and at least four times during each school year thereafter, PGCBE staff shall visit each homeless shelter in Prince George's County which serves school-aged children and youth, including domestic violence programs, and shall offer to inform and advise the resident parents concerning the educational rights of

7

homeless children and youth and PGCBE's obligations under the McKinney Act, MSDE regulations, PGCBE policy and this Agreement, the services available to homeless children and youth through PGCBE, how to access those services, and the importance of telling someone at the school if a student loses permanent housing. The HEC shall maintain a complete and accurate record of each visit, including, but not limited to the date of the visit, the shelter residents who participated, documentation concerning any newly identified homeless child or youth, and any follow-up resulting from the visit.

23.     Beginning in school year 2001-2002 and ongoing, PGCBE shall offer two training sessions each year to DSS staff and to the staff of DSS-contracted agencies or entities, identified to PGCBE by DSS, which service homeless children and youth or their families. The HEC shall coordinate with DSS and its contracted agencies to ensure that all efforts are made to provide training to all staff who might have contact with homeless children and families. The training shall include but not be limited to PGCBE's obligations and the rights of students under the McKinney Act, MSDE regulations, PGCBE policy and this Agreement, how DSS, DSS-contracted agencies and PGCBE will collaborate to identify and provide services to homeless children and youth, and the proper use and disposition of all PGCBE forms regarding the education of homeless children and youth. The HEC shall maintain a complete and accurate record of each training, including, but not limited to the date of the training, the person(s) who participated from DSS and their job titles, the person(s) who participated from any DSS-contracted agencies and their job titles, and any follow-up resulting from the training.

8

24. Beginning September 1, 2001 and ongoing, the HEC shall participate actively and regularly in the Prince George's County Homeless Services Partnership (Partnership). The HEC shall maintain a complete and accurate record of all such participation including, but not limited to, the dates of all meetings attended and the substance of all activities carried out.

25. As part of the active participation in the Partnership, the HEC shall, no later than November 1, 2001, initiate and conduct a training for all Partnership members on PGCBE's obligations and the rights of students under the McKinney Act, MSDE regulations, PGCBE policy and this Agreement and the role of Partnership organizations in collaborating with PGCBE to fulfill its obligations. At this training the HEC shall distribute copies of the informational flyer or brochure, and the poster. The HEC shall maintain a complete and accurate record of this training, including copies of all promotional materials announcing the training, a list of all participants and their agency affiliations, and any follow-up from the training.

Training of School Personnel

26. No later than October 15, 2001, PGCBE shall develop, or identify, customize and adopt, a training curriculum and in-service program adequate to educate all relevant school personnel regarding: the causes and effects of homelessness; the needs of homeless children and youth; PGCBE's obligations under the McKinney Act, MSDE regulations,

9

and PGCBE's policies; the McKinney Act definition of homelessness;[1] the proper use of PGCBE forms concerning the identification of, education of, and PGCBE services to homeless children and youth; the scope of services available in the community to homeless children and youth and their families; PGCBE's policies concerning coordinating with social services and housing agencies to serve homeless children and youth; and the terms of this Agreement. Relevant school personnel shall include all those who have contact with students and/or parents regarding a student's education, and all school or administrative personnel who have responsibility for programs involving the education of homeless students. The program shall contain provisions regarding the method and time-frame for training new hires, and shall set forth a centralized method by which to ensure that each staff member in the school system completes the training. The curriculum and in-service program shall be designed to educate school personnel in different job categories. PGCBE shall provide plaintiffs' counsel with a draft of the curriculum and in-service program on or before September 15, 2001 for review and comment. If the plaintiffs' counsel believe that the curriculum and in-service program are inadequate to train staff on the subjects enumerated above, plaintiffs' counsel shall endeavor to resolve their concerns with PGCBE. If the parties cannot resolve their differences, either party may request that the Court determine whether the proposed

---

[1] Throughout this Agreement, references to homelessness or homeless children and youth refer to those individuals identified in the McKinney Act at 42 U.S.C. § 11302, or in the Preliminary Guidance for the Education for Homeless Children and Youth Program issued in June 1995 by the U.S. Dept. of Education, or in Prince George's County Public Schools' Administrative Procedure 5010, Section III.

curriculum and in-service program comply with the requirements of this Agreement.

27.      During the 2001-2002 school year, PGCBE shall, using the above-mentioned curriculum and in-service program, educate all relevant school personnel.     The following types of personnel shall be educated no later than December 22, 2001: principals and other relevant school, regional and district-level administrators, guidance counselors, front office staff, school nurses, and Pupil Personnel Workers. The following types of personnel shall be educated no later than May 31, 2002: teachers and other classroom personnel, media specialists, coaches, maintenance workers, cafeteria workers, school bus drivers, and all other relevant school personnel. Persons selected to conduct the in-service programs shall be appropriately qualified, shall be specially trained to present the curriculum, and shall be capable of communicating effectively the material in the curriculum. PGCBE shall conduct refresher sessions for all school personnel once during each school year thereafter. Such refresher courses shall be customized to highlight any area of non-compliance or other difficulty identified in the previous year. PGCBE shall provide the full initial training to each new hire. Each staff member shall sign an attendance list at the session, and the lists shall be maintained by the HEC. On or before October 1, 2001, PGCBE shall submit a detailed and comprehensive plan for the conduct of the training, including identification of the trainer(s), to plaintiffs' counsel for review and comment. If the plaintiffs' counsel believe that the plan is inadequate to meet the terms of this Agreement, they shall endeavor to resolve their concerns with PGCBE. If the parties cannot resolve their differences, either party may request that

11

the Court determine whether the proposed plan complies with the requirements of this Agreement.

Identifying, Tracking and Serving Homeless Children and Youth

28.   No later than October 1, 2001, PGCBE shall designate and specially train one staff person at each public school in Prince George's County as the contact person for homeless education issues at that school (such as the registrar, the school nurse or a guidance counselor). It is not the intention of the parties that this contact person shall be responsible for all interactions with homeless students and their parents[2] at each school. Rather, this person shall function as a resource for all school staff and the HEC, as well as for homeless students and their parents, on matters regarding the provision of educational services to homeless children. The identity of this contact person at each school shall be made known to all staff at that school, to every homeless student enrolled at that school and her or his parent, and to the HEC. This contact person shall, jointly with the HEC, be responsible for ensuring that the McKinney Act, MSDE regulations, PGCBE policies concerning the education of homeless children and youth and the terms of this Agreement are followed by all school staff.

29.   Beginning on October 1, 2001 and ongoing, PGCBE shall take all reasonable steps to identify all school-aged homeless children and youth residing in Prince George's County. These steps shall include, but not be limited to:

---

[2]

Throughout this Agreement, the term "parent" is used to mean parent, guardian or other adult responsible for a homeless child or youth.

a.      inquiring of every student who withdraws from a school or who enrolls in a school during the school year whether the change of school is related to a loss of permanent housing, as described in paragraph 32 of this Agreement;

b.    keeping a record of every homeless student who self-identifies to school personnel as outlined in paragraphs 33 and 37 of this Agreement; and

c.      collaborating with all shelters located in Prince George's County, including domestic violence programs, with DSS, and with all agencies contracted with DSS, identified to PGCBE by DSS, to provide services to homeless persons, to identify homeless children and youth and to arrange that the identity of, and other relevant information concerning, every school-aged homeless child identified by all such entities is shared with PGCBE to the extent permitted by law.

30.      To facilitate this exchange of information with the shelters, DSS and DSS-contracted agencies, PGCBE shall, no later than October 1, 2001, in cooperation with those entities, draft and implement the use of a parental release form.

31.      For each homeless child or youth identified by DSS or a DSS-contracted agency, PGCBE shall actively encourage DSS or the contracted agency to inform the child and her parent of their rights under the McKinney Act, including the choice of schools and the availability of transportation, both orally and in writing by giving them a copy of the PGCBE flyer or brochure described in paragraph 13 of this Agreement. PGCBE shall also actively encourage DSS or the contracted agency to assist the parent to complete the omnibus form (the School Choice for Homeless Students section, the Transportation

13

Request section if necessary, the Request for Services for Homeless Students section, and the Request for Waiver of School Fees section). PGCBE shall request that DSS or the contracted agency transmit all such completed omnibus forms to the HEC and give copies of the completed forms to the parent. PGCBE shall also encourage DSS and the contracted agencies to refer the student and the parent to the HEC and to the contact person for homeless students at the school the parent has chosen for the child to attend.

32. Beginning in September, 2001 and ongoing, Prince George's County Public Schools (PGCPS) personnel shall inquire, with respect to every student who withdraws from or enrolls in a Prince George's County Public School, in a place and manner which ensures privacy and confidentiality, whether the withdrawal or enrollment is related to homelessness (including children living in shelters and those living in doubled-up situations with friends or relatives due to a loss of permanent housing) and, if so, whether the child has not been attending school for any period of time. The school personnel shall record the responses on the School Withdrawal Form or the School Enrollment Form. For every child identified as homeless, a copy of the form shall be sent to the HEC. The HEC shall review each form and confirm such review by signing off on the form. Forms shall be retained in a single central repository organized by student name.

33. Beginning in September, 2001 and ongoing, for every student whose school withdrawal or enrollment is determined to be related to homelessness, and for every student otherwise identified as homeless, school personnel shall, in a place and manner which ensures privacy and confidentiality, immediately inform the student and her/his parent,

14

both orally and in writing, of their rights under the McKinney Act, MSDE regulations,

PGCBE policy and this Agreement, and explain that parents have a right to indicate a

preference either for the child's continued school placement at the school of origin or for

placement in the school which serves the attendance area in which he or she is

temporarily living; that the  school system must comply with the parent's preferred

placement and that transportation will be provided, if  feasible.[3]  School personnel shall

consult with the parent concerning her choice of school and shall further assist the parent

to record her choice of schools in the School Choice for Homeless Students section of the

omnibus form, to fill in the Transportation Request section of the omnibus form if the

student needs transportation to get to and from the school chosen, and to complete the

Request for Services for Homeless Students and the Request for Waiver of School Fees

sections of the omnibus form.  The parent shall be given copies of all completed forms, a

blank Appeal Form, and a copy of the PGCBE informational flyer or brochure referenced

in paragraph 13 of this Agreement in a "Parent Pack."  School personnel shall

immediately transmit the omnibus form by facsimile or other similarly expeditious means

to the HEC.  School personnel shall also immediately transmit the form to the

Transportation Office if the Transportation Request section of the form is completed.

The originals of all forms shall be kept in the student's file at the school.

34.     No later than October 1, 2001, PGCBE shall implement a process by which homeless

---

[3] Nothing in this Agreement shall deprive the school system of its rights and obligations pursuant to its discipline policies to discipline homeless children and youth on the same basis as children and youth who are not homeless, and to suspend, expel or administratively transfer such students accordingly.

students or their parents may request a waiver of school fees and costs (as enumerated in paragraph 7 of this Agreement). The process shall provide a method by which PGCBE shall promptly approve such waiver requests as necessary to ensure that homeless children are provided services comparable to services offered to other students in the school they are attending and to ensure that barriers to education are reduced for homeless children. The process also shall provide that:

a.      copies of each such request and the decision thereon shall be distributed as follows -- one to the student or parent making the request, one to the principal at the student's school who shall then place the Request in the student's file at the school, and one to the HEC;

b.      In the event that a Request is denied, the reason for the denial shall be written on the form and shall be given to the student or parent making the Request along with a completed Notice of Denial of Services and Right to Appeal Form and a blank Appeal Form;

c.      the HEC shall review each form and decision thereon for compliance with PGCBE's process and this Agreement and confirm such review by signing off on the form; and

d.      the forms shall be retained in a single central repository organized by student name.

On or before September 15, 2001, PGCBE shall submit a draft of the proposed process for waiver of fees to plaintiffs' counsel for review and comment. If the plaintiffs' counsel

16

believe that the proposed process is inadequate to meet the terms of this Agreement, they shall endeavor to resolve their concerns with PGCBE. If the parties cannot resolve their differences, either party may request that the Court determine whether the proposed process complies with the requirements of this Agreement.

35. Beginning in September 2001 and ongoing, PGCBE shall establish a single central repository of files organized by student name in the office of the HEC. In each file shall be kept a copy of each PGCBE document or form (the omnibus form, any Notices of Denial of Services and Right to Appeal forms, any fee waiver requests, any Appeal forms) completed either by school personnel, by shelter staff, by the parent or by the student regarding each episode of homelessness experienced by the student.

36. Beginning in September, 2001 and ongoing, the HEC or her designee shall, within 3 school days of receipt, review all forms, confirm such review by signing off on the forms, take any and all action as required by the McKinney Act, MSDE regulations, PGCBE policy and this Agreement, keep a written record of all such action taken and the dates on which such action was taken, and file all forms in a single central repository organized by student name. In the case of requests regarding school enrollment, all necessary action shall be taken on the date of receipt in order to accomplish immediate enrollment. The HEC's signature on the forms shall be certification that the forms are properly completed and that the action taken complies with the McKinney Act, MSDE regulations, PGCBE policies and this Agreement.

37. Beginning in school year 2001-2002 and ongoing, the HEC shall record on a Tracking

17

Form for Homeless Students complete information concerning every child who is identified as homeless by or to PGCBE and report such information to MSDE in a timely manner. The HEC shall keep copies of all completed Tracking Forms in a single central repository.

Transportation

38.    PGCBE acknowledges its obligation, under federal and state law and regulations, to transport homeless children to their school of origin, if such is in their best interest, and if transportation is feasible. Beginning August 15, 2001 PGCBE shall transport homeless children, through a flexible school transportation system, from their temporary residence in Prince George's County to their school of origin in Prince George's County (and back) if determined by their parents to be in their best interest, if the distance is 35 road miles or less. If the distance is greater than 35 road miles, the transportation department shall determine, on a case by case basis, whether transportation to the school of origin is feasible, based upon the criteria contained in COMAR 13A.05.09.04D(2) and the further considerations outlined in this paragraph. The flexible transportation system shall incorporate:

a.    The utilization of all types of school buses for all types of students (those for regular schools, for magnet schools, for pre-schools, for vocational schools, for special education students or special education schools);

b.    The ability to reroute all types of school buses;

c.    The ability to interface with and utilize public transportation and to pre-pay public

18

transportation fares;

d.　　The ability to pre-pay mileage costs to parents or guardians who provide the transportation themselves;

e.　　The ability to utilize private taxi services or private bus contracts;

f.　　The ability to transport students from residences in the "north" county to schools of origin in the "south" county and from residences in the "south" county to schools of origin in the "north" county;

g.　　The ability to accommodate the need of a homeless student to arrive at school in time to participate in the school breakfast program; and

h.　　A method by which the school system will choose between alternative modes of transportation by selecting the mode that would be most appropriate for the individual student. In making a choice between alternatives, the school system shall consider travel time, convenience, safety, and cost, and the child's parent shall be consulted.

The flexible transportation system shall not require:

i.　　Any student to ride more than two buses (school buses or public transportation) each way to or from school;

j.　　Any elementary-school-aged child to ride public transportation unless accompanied by an adult whose fare is also paid by PGCBE; or

k.　　Any child under the age of 10 to ride in a taxi unless accompanied by an adult whose return fare is also paid by PGCBE.

The impact of utilizing the 35-mile presumptive feasibility standard described herein shall be analyzed by PGCBE within thirty (30) days of the last day of school for students in the 2001-2002 school year. The analysis and results shall immediately be communicated to plaintiffs' counsel. Should either PGCBE or plaintiffs' counsel determine that a modification of the flexible transportation system, including the 35-mile presumptive feasibility standard, is required, PGCBE and plaintiffs' counsel shall attempt to reach an agreement thereon, including whether the 35-mile presumptive feasibility standard shall be increased, decreased or remain the same. If the parties cannot reach such an agreement, the parties agree that the Court shall have authority, on the request of either party, to resolve the dispute and/or determine the parameters of feasible transportation for homeless students in Prince George's County. PGCBE shall not implement any contested modification until the Court has issued its decision as set forth herein.

39. Beginning on August 15, 2001 and ongoing, PGCBE shall provide transportation to every homeless student who will be attending the local school serving the area in which the student is temporarily living, if PGCBE provides transportation to permanently housed students attending the same local school who live an equivalent distance from the school. Such transportation shall be provided by the same means as is provided to other students in the same attendance area.

40. Beginning on August 15, 2001 and ongoing, the Transportation Office shall make and implement transportation arrangements for homeless students as quickly as possible, but

20

in no event more than 3 school days after receiving the request for transportation, regardless of whether the student is remaining at her school of origin or is transferring to a new local school.

41.    No later than October 15, 2001, PGCBE shall produce an easy-to-read version of the transportation services available to homeless students, to be at or below reading grade level 5 and available in both English and Spanish. Plaintiffs' counsel shall be given a meaningful opportunity to review and comment on this document before it is finalized and adopted.

42.    Beginning on August 15, 2001, the Transportation Office shall respond to all transportation requests in writing to the requesting parent. Beginning on October 15, 2001 and ongoing, such written responses shall be made by completing the appropriate portion of the omnibus form. A copy of the response shall also be transmitted to the HEC or her designee. The response shall include the details of the transportation that has been arranged or, if the requested transportation could not be arranged, an explanation of the reason. Beginning October 15, 2001, the response shall include a copy of the easy-to-read version of the available transportation services (see paragraph 41), and a blank Appeal Form. The HEC or her designee shall be responsible for ensuring that information concerning the transportation arrangements has been communicated directly to the parent and shall keep a written record of such direct communication. The HEC or her designee shall review each transportation plan and each denial of transportation for compliance with this Agreement and controlling laws and regulations. These records

21

shall be kept in a single central repository organized by student name.

Appeals

43.   No later than October 1, 2001, PGCBE shall design and implement a new appeals process
      to handle issues involving the education of homeless children and youth.  At a minimum,
      the appeals process shall specify:

      a.   That in every instance when any school personnel or other PGCBE employee
           denies, in whole or in part, any oral or written request by a homeless student or a
           parent of a homeless student for any educational service (including but not limited
           to school enrollment, transportation, tutoring, waiver of school fees, transfer of
           school records, special education services, school supplies, or medical or social
           services referrals), or takes any other adverse action, the school personnel or
           PGCBE employee shall give the requesting student or parent a completed Notice
           of Denial of Services and Right to Appeal Form, and a blank Appeal Form;

      b.   That whenever any homeless student or parent orally disputes to PGCBE or to
           school personnel any decision concerning enrollment, transportation, waiver of
           fees or provision of services to the homeless student, or any other adverse action,
           the student or parent shall be informed immediately of the right to appeal and
           given a blank Appeal Form.

      c.   That appeals shall be filed in the first instance with the principal of the school
           where the student attends or would like to attend;

      d.   That the principal shall (alone or in consultation with other appropriate PGCBE

22

personnel, such as the Director of Transportation or the HEC) reach a disposition on all appeals as quickly as possible, but in no event later than 5 school days after receiving the appeal;

e.     That the disposition of all appeals shall be indicated in writing on the Appeal Form;

f.     That unless the parent signs on the Appeal Form or otherwise indicates in writing that she is satisfied with the disposition, the matter shall be elevated automatically to the Superintendent's designee in the Office of Appeals;

g.     That the Office of Appeals shall reach a disposition of the matter as quickly as possible, but in no event later than 10 school days after receiving it, and shall provide the parent with a written explanation of the disposition;

h.     That unless the parent signs on the written explanation or otherwise indicates in writing that she is satisfied with the disposition, the matter shall be elevated automatically to the PGCBE;

i.     That the PGCBE shall provide the parent with an opportunity to appear in person before the Board, or its committee, for an informal hearing on the matter, shall reach a disposition as quickly as possible, but in no event later than 30 school days after receiving it, and shall provide the parent with a written explanation of the disposition; and

j.     That the parent may elevate the appeal to MSDE if she remains dissatisfied with the disposition of the appeal.

k.      During the dispute resolution process, including any appeals, the student shall remain enrolled in the school system.  Throughout the appeals process, the student may continue to attend the school of origin if the parent arranges and pays for transportation for the student; or the student shall attend the school closest to the family's temporary domicile, if the parent does not arrange for transportation to the school of origin.

44.    Copies of all appeals and dispositions shall be transmitted to the HEC who shall review them for compliance with this Agreement and controlling laws and regulations, shall sign off that they have been reviewed, and shall file the records in a single central repository organized by student name.

45.    The PGCBE shall submit a draft of the revised appeal process and all relevant forms to the plaintiffs' counsel for review and comment on or before September 15, 2001.  Should plaintiffs' counsel believe that the draft is inadequate to satisfy the terms of this Agreement, they shall endeavor to resolve the dispute with the PGCBE.  If the parties cannot agree, either party may request that the Court resolve whether the draft complies with the obligations imposed by this Agreement.

Evaluation

46.    PGCBE shall arrange for the Associate Superintendent of Accountability and Assessment or his designee in the Department of Research and Evaluation, to conduct evaluations of the effectiveness of PGCBE's programs serving homeless children and youth.  The evaluations shall be conducted annually, to be completed no later than July 15 each year.

24

A copy of each evaluation shall be provided to plaintiffs' counsel immediately upon its completion. The evaluation shall include an assessment of the effectiveness of services provided to homeless children and youth and an assessment of PGCBE's compliance with this Agreement, the McKinney Act, MSDE regulations and PGCBE policies and any other actions taken by PGCBE to improve access to education for homeless children and youth. The evaluation shall also identify any remaining barriers to compliance with this Agreement and to educational access and success for homeless students and make recommendations for removing those barriers. On or before November 1, 2001, PGCBE shall submit a detailed and comprehensive plan for the conduct of the evaluation, including but not limited to identification of what baseline information will be used for comparison, what specific measures will be used to quantify effectiveness, and the manner in which each element will be evaluated for success or failure,  to plaintiffs' counsel for review and comment. If plaintiffs' counsel believe that the plan is inadequate to meet the terms of this Agreement, they shall endeavor to resolve their concerns with PGCBE. If the parties cannot resolve their differences, either party may request that the Court determine whether the proposed plan complies with the requirements of this Agreement.

Monitoring Compliance

47.    The Superintendent of Schools shall assign an individual, at the Director level or higher, to be responsible to monitor PGCBE's compliance with this Agreement, the McKinney Act, MSDE regulations and PGCBE policies, and shall set up a mechanism by which she

or he may identify or learn of any instances of non-compliance.  For each instance of non-compliance the assigned individual learns of or identifies, the assigned individual shall direct the HEC to take promptly any required action to address the immediate needs of a homeless student.  For each instance of non-compliance, the assigned individual shall, within 14 days of identifying or learning of the non-compliance, draft a remedial plan and submit the plan to the Superintendent for the purpose of ensuring that similar non-compliance does not recur.  Each remedial plan shall describe the non-compliance, the cause of the non-compliance, and the steps necessary to prevent future similar non-compliance.  The remedial plan shall also describe the prompt steps taken to address the needs of any homeless student affected by the non-compliance.  The assigned individual shall ensure and document that the steps outlined in the remedial plan are taken within 45 days in order to prevent recurrence.  Plaintiffs agree not to seek intervention from the Court to address any individual instance of non-compliance so long as the non-compliance is remedied as described herein.

48.     PGCBE shall provide to plaintiffs' counsel a monthly report of PGCBE's compliance with this Agreement.  The report shall include, at a minimum:

   a.     Documentation of compliance with training required by paragraph 27 of this Agreement;

   b.     Copies of all completed omnibus forms and Appeal Forms;

   c.     Copies of all completed School Enrollment and School Withdrawal Forms for homeless students;

26

d.      Copies of all remedial plans developed pursuant to paragraph 47 of this Agreement and documentation of the steps taken to implement each plan;

e.      Copies of all documentation concerning participation by the HEC in the Prince George's County Homeless Partnership;

f.      Copies of all records concerning distribution of the informational flyer or brochure, and the poster;

g.      Copies of all records concerning training of shelter staff, shelter residents, DSS staff and staff of DSS-contracted agencies or entities;

h.      Copies of all records concerning distribution of PGCBE forms to shelters, DSS and DSS-contracted agencies or entities;

i.      Copies of all completed Tracking Forms for Homeless Students;

j.      A list of the designated homeless education contact people at each school;

k.      Copies of all Transportation Requests and responses thereto;

l.      Copies of all dispositions of appeals;

m.      Copies of all fee waiver requests and actions taken thereon; and

n.      Complete information concerning the costs of transportation of homeless students during the month, including the number of homeless students transported during the month, the methods by which they were transported, the individualized cost of transporting them, if available, and any other information collected by PGCBE in anticipation of the end-of-year analysis.

PGCBE shall submit the first monthly report, to cover both August and September, 2001,

27

no later than October 10, 2001.  Subsequent reports shall be submitted on the tenth of the month following the month covered by the report, beginning November 10, 2001. Plaintiffs counsel's fees to review the monthly reports shall be paid at a reduced hourly rate of $75 per hour for time expended by attorneys and $30 per hour for time expended by law clerks or paralegals and shall not exceed $500 for work performed within any given month.

The reduced hourly rate, but not the monthly cap, shall apply to all time expended resolving disputes between the parties regarding compliance where such disputes are resolved without the need for either party to seek court intervention.  Should application to the court for relief be required, after defendants have been given a reasonable opportunity to cure, plaintiffs' counsel's fees for all time expended on compliance efforts related to the dispute will not be limited by either the reduced rate or the hourly cap if plaintiffs prevail in court or the defendants cure the contempt prior to a final judicial decision by voluntary action or settlement.  Nothing in this paragraph shall constitute a waiver of any of defendants' defenses to a petition for award of attorneys' fees submitted pursuant to this paragraph.

49. All information identifying homeless children and their parents provided to plaintiffs' counsel shall be subject to the terms of the Stipulated Order Regarding Confidentiality of Discovery Material entered by this Court on June 19, 2001.

50. This Agreement may be enforced by any member of the Classes certified by the Court on June 1, 2001, and the Court shall retain continuing jurisdiction over this Consent Decree.

28

51. Upon substantial compliance with this Agreement for a period of two consecutive school years, PGCBE shall be required to report to plaintiffs' counsel only semi-annually in December and June. Upon substantial compliance with this Agreement for a period of two additional consecutive school years, PGCBE need not submit further reports.

52. Except as described herein relating solely to compliance monitoring, the plaintiffs' claim for attorney's fees is hereby reserved.

WE CONSENT:

KNIGHT, MANZI, NUSSBAUM
    & LAPLACA, P.A.

By: _____
    Andrew Nussbaum, Federal Bar No. 00959
    Roger C. Thomas, Federal Bar No. 08762
    14440 Old Mill Road
    Upper Marlboro, MD 20772
    (301) 952-0100
    (301) 952-0221 facsimile

Attorneys for Defendants


_____
IRIS T. METTS, Superintendent
on her own behalf and on behalf of the
Prince George's County Board of Education

PUBLIC JUSTICE CENTER

By: _____
    Laurie J. Norris, Federal Bar No. 08940
    Francine K. Hahn, Federal Bar No. 25227
    Tara Andrews, Federal Bar. No. 26152
    Debra Gardner, Federal Bar No. 24239
    500 East Lexington Street
    Baltimore, MD 21202
    (410) 625-9409
    (410) 625-9423 facsimile

Attorneys for Plaintiffs


_____
MALEESA COLLIER
Plaintiff


_____
GERTRUDE LEAK
Plaintiff


_____
VICTORIA MANNS
Plaintiff

29

51.   Upon substantial compliance with this Agreement for a period of two consecutive school years, PGCBE shall be required to report to plaintiffs' counsel only semi-annually in December and June.  Upon substantial compliance with this Agreement for a period of two additional consecutive school years, PGCBE need not submit further reports.

52.   Except as described herein relating solely to compliance monitoring, the plaintiffs' claim for attorney's fees is hereby reserved.

WE CONSENT:

KNIGHT, MANZI, NUSSBAUM
        & LAPLACA, P.A.

By: _____
   Andrew Nussbaum, Federal Bar No. 00959
   Roger C. Thomas, Federal Bar No. 08762
   14440 Old Mill Road
   Upper Marlboro, MD 20772
   (301) 952-0100
   (301) 952-0221 facsimile

Attorneys for Defendants


_____
IRIS T. METTS, Superintendent
on her own behalf and on behalf of the
Prince George's County Board of Education

PUBLIC JUSTICE CENTER

By: _____
   Laurie J. Norris, Federal Bar No. 08940
   Francine K. Hahn, Federal Bar No. 25227
   Tara Andrews, Federal Bar. No. 26152
   Debra Gardner, Federal Bar No. 24239
   500 East Lexington Street
   Baltimore, MD 21202
   (410) 625-9409
   (410) 625-9423 facsimile

Attorneys for Plaintiffs

_____
MALEESA COLLIER
Plaintiff

_____
GERTRUDE LEAK
Plaintiff

_____
VICTORIA MANNS
Plaintiff

29